# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00240-CV

### Myrad Properties, Inc., Appellant

### v.

### LaSalle Bank National Association, as Trustee for the Registered Holders of GMAC Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, Series 1997-C1, Robin Green; and Melissa Cobb, Appellees

### FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT NO. 220061.C, HONORABLE RICK MORRIS, JUDGE PRESIDING

## DISSENTING OPINION

Ours is but a limited role when called upon to render a trial unnecessary. In the context of a non-judicial foreclosure sale and a public notice of the sale that contained no error on its face that one piece of property was to be sold, this case poses the questions whether (i) a lender, by referencing a deed of trust in the notice, automatically expands the properties subject to the sale as expressly identified in the notice to include all of the properties contained in the deed of trust—not just the property identified in the notice, and (ii) by referencing the deed of trust in the notice, the trustee and purchaser at the foreclosure sale are authorized to unilaterally file a correction deed after the fact to enlarge the property subject to the sale.

Because the majority drifts from the function of summary judgment and invades the province of the trier of fact in answering these questions, I respectfully dissent. As there are genuine

issues of material fact that should preclude summary judgment, I would reverse and remand to the trial court for further proceedings.

## Factual and Procedural Background

In 1997, appellant Myrad Properties, Inc. financed two apartment complexes—the Casa Grande Apartments and the La Casa Apartments—through a $1,050,000 promissory note (the "Note").[1] Myrad executed a Deed of Trust, Security Agreement and Fixture Filing ("Deed of Trust") on both properties to secure the Note, and the Deed of Trust was recorded in the real property records of Bell County. The Deed of Trust defined the real property that was pledged by attaching and incorporating Exhibits A-1 and A-2. Exhibit A-1 contained the metes and bounds description for the La Casa property, and Exhibit A-2 contained the metes and bounds description for the Casa Grande property.

Myrad made payments under the Note for approximately eight years, totally approximately $960,000, but beginning in December 2005, Myrad failed to make timely payments on the Note. Appellee LaSalle Bank National Association was the holder of the Note at that time. In the event of a default by Myrad, the parties agree that the Deed of Trust gave LaSalle the right to non-judicial foreclosure and the right to sell the properties separately or together:

> . . . sell for cash or upon credit the Property or any part thereof . . . , pursuant to power of sale or otherwise, at one or more sales, as an entity or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law . . . .

---

[1] The properties are located over one mile away from each other.

In October 2006, LaSalle exercised its right to foreclose, and after providing demand and notice of acceleration referencing both properties, LaSalle proceeded with non-judicial foreclosure under the Deed of Trust by filing an Appointment of Substitute Trustee and Notice of Substitute Trustee's Sale (the "Notice") in Bell County. Both documents defined the property to be sold by referring to "Exhibit A" that was attached to the documents:

> The real property described on Exhibit A attached hereto and made a part hereof for all purposes, together with all improvements and personal property described in the Deed of Trust.

Exhibit A contained the metes and bounds property description for the Casa Grande property and not for the La Casa property. The Notice also stated that LaSalle, as holder of the Note, was electing to proceed against both the real and personal property described in the Deed of Trust:

> The Deed of Trust may encumber both real and personal property. Notice is hereby given of Holder's election to proceed against and sell both the real and personal property described in the Deed of Trust in accordance with the Holder's rights and remedies under the Deed of Trust and Section 9.604 of the Texas Business and Commerce Code.

The law firm of Powell Goldstein LLP was engaged to represent LaSalle on the Myrad foreclosure. Appellee Melissa Cobb, an attorney with that firm, prepared the foreclosure documents for LaSalle, and appellee Robin Green was her supervising attorney. Cobb and Green, as well as Kenneth Strickland, were appointed substitute trustees.

Strickland conducted the non-judicial foreclosure sale on November 7, 2006. The parties dispute whether Strickland's recitation at the sale was sufficient to give notice that both the

3

La Casa property and the Casa Grande property were being sold. There was evidence that potential bidders were present at the sale, but that LaSalle was the only bidder on the property with a credit bid of $978,000. LaSalle provided evidence that the bid price was calculated based on the Note's unpaid principal balance, plus accrued interest, late charges, and expenses incurred. The parties dispute whether the credit bid exceeded the amount Myrad owed under the Note and the value of the properties at the time of the foreclosure. On the same day as the foreclosure sale, Strickland executed the Substitute Trustee's Deed and had it recorded in the real property records of Bell County. The Substitute Trustee's Deed recited the conveyed property by referencing Exhibit A, which exhibit contained only the property description for the Casa Grande Apartments.

Two days after the foreclosure sale, Myrad filed suit against appellees and obtained a temporary restraining order prohibiting appellees from filing a reformed or correction deed without court order or Myrad's consent. Myrad sought declaratory relief from the trial court that the appellees' notice of foreclosure and the non-judicial foreclosure sale did not include the La Casa property. After the trial court dissolved the temporary restraining order, appellees directed Strickland to file a "Correction Substitute Trustee's Deed" ("Correction Deed") to "correct the property description," attaching a revised Exhibit A, which included the metes and bounds description for both the Casa Grande and the La Casa properties as well as additional provisions addressing easements, improvements, fixtures, personal property, and other property interests. After Strickland filed the Correction Deed, Myrad amended its pleadings, additionally seeking a declaration from the trial court that the Correction Deed was invalid and unenforceable.

4

Both sides thereafter filed summary judgment motions pursuant to Texas Rules of Civil Procedure 166a(c) and 166a(i). Myrad sought a partial summary judgment pursuant to rule 166a(c) on the following claims for declaratory judgment: (1) the foreclosure sale was valid, (2) the foreclosure sale did not convey any part of the La Casa Apartments, (3) Myrad was entitled to a credit of $978,000 against its obligations under the Note as of the date of the foreclosure sale, and (4) the Correction Deed was invalid or void or unenforceable.[2] Myrad also sought summary judgment on appellees' claims for reformation and rescission of the Substitute Trustee's Deed.

Appellees sought summary judgment pursuant to 166a(c) on their claims for declaratory relief that the substitute trustee was entitled to file the Correction Deed that included the foreclosure of the La Casa property or, in the alternative, that LaSalle maintains all legal and equitable interest in the properties under the Deed of Trust and the foreclosure sale did not result in the Deed of Trust being satisfied and extinguished. Appellees further sought summary judgment pursuant to 166a(c) and 166a(i) on Myrad's claims for declaratory relief, suit to quiet title, breach of trustee's duty, and conspiracy to breach the trustee's duty.

The summary judgment evidence included deposition excerpts, documents and correspondence between the parties, and the transcript from the temporary injunction hearing. Myrad also provided the affidavit of Dan Nelson, an attorney practicing in the area of real estate for approximately twenty-five years. Nelson testified concerning the customary preparation and posting

---

[2] In addition to its declaratory claims on which it sought summary judgment, Myrad's other pleaded claims for declaratory relief are that the Deed of Trust was satisfied and extinguished by the credit bid, that there is a surplus owed to Myrad, that LaSalle no longer has a legal or equitable interest in the La Casa Apartments, and that Myrad is the owner of the La Casa Apartments. Myrad also sought an accounting of the reserve and escrow amounts held by LaSalle on Myrad's behalf.

of notices and conducting non-judicial foreclosure sales. Based on his review of the foreclosure documents and testimony as to the foreclosure sale, it was Nelson's opinion that the real property included in the Notice and the Substitute Trustee's Deed was the real property known as the Casa Grande Apartments. He further concluded that if the lender's intent was to foreclose on both the La Casa and Casa Grande properties that the Notice "would be misleading to a reader." Appellees did not object to Nelson's affidavit as summary judgment evidence.[3]

After a hearing on the competing motions, the trial court denied Myrad's motion and granted appellees' motion, except as to rescission, and entered a final summary judgment order that conveyed the La Casa and Casa Grande properties to LaSalle as of November 7, 2006, ruling as a matter of law that the foreclosure sale included both properties and that the Correction Deed vested title in both properties. Myrad's appeal of the trial court's ruling followed.

---

[3] Although appellees did not object in the trial court, appellees argue on appeal that Nelson's opinions were inadmissible because they constitute conclusory and, therefore, inadmissible evidence. *See Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997). The majority concludes that Nelson's affidavit is of no probative value and that it can neither support nor defeat summary judgment, but states that it has considered the affidavit as an "extension" of Myrad's briefing. Although appellees have not waived substantive complaints concerning Nelson's affidavit, *see* Tex. R. Civ. P. 166a(f); *Mathis v. Bocell*, 982 S.W.2d 52, 58-60 (Tex. App.—Houston [1st Dist.] 1998, no pet.), I would conclude that Nelson's affidavit constitutes competent summary judgment evidence. *See* Tex. R. Civ. P. 166a(c); Tex. R. Evid. 702; *Garner v. Long*, 106 S.W.3d 260, 268 (Tex. App.—Fort Worth 2003, no pet.) (expert affidavit may be competent summary judgment evidence when credible, clear, positive, direct, and when it could have been readily controverted). Nelson testifies to the standard procedures for noticing and conducting non-judicial foreclosure sales and how appellees failed to comply with the standard procedures if it was their intention to include the La Casa property in the foreclosure.

**ANALYSIS**

The majority affirms the trial court by concluding that the public notice of the non-judicial foreclosure was legally sufficient, as a matter of law, to include the two separate pieces of property in the foreclosure sale and that appellees negated any fact issue whether any irregularity rendered the sale invalid. The majority also affirms the trial court's denial of Myrad's claims including Myrad's breach of trustee's duty and conspiracy claims but, finding a fact issue that precludes summary judgment, reverses and remands for further proceedings as to Myrad's declaratory claim that it is entitled to a surplus.

***Trial Court's Declarations on Notice and Correction Deed***

The majority affirms the trial court's declarations that the foreclosure sale conveyed title to the La Casa and the Casa Grande properties in LaSalle and that the Correction Deed vested title in the properties in LaSalle by concluding that it was "undisputed" that the "property" that LaSalle was seeking to foreclose included both the La Casa and the Casa Grande Apartments and that the public notice of the foreclosure sale, while "internally inconsistent regarding what property would be sold," complied with section 51.002 of the property code and the Deed of Trust as a notice for both properties.

Under the Uniform Declaratory Judgment Act, a court of record within its jurisdiction has the power to declare rights, status and other legal relations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) (West 1997). To obtain a declaratory judgment, a party must show that a real controversy exists between the parties, and that the entire controversy may be determined by a judicial declaration. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). In a

declaratory judgment action, "the party asserting the affirmative of the controlling issues" bears the burden of proof. *Graff v. Whittle*, 947 S.W.2d 629, 634-35 (Tex. App.—Texarkana 1997, writ denied); *see also Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (same standards apply to declaratory judgments decided by summary judgment). Appellees, as the movants seeking affirmative requests for declaratory relief, had the burden to show they were entitled to judgment as a matter of law—that the notice complied with the property code and the Deed of Trust and that Correction Deed was valid to vest title in both properties in LaSalle.[4]

For the foreclosure sale to convey both properties, the trustees had to have the power to sell the properties from the Deed of Trust and to have complied with the statutory requirements for non-judicial foreclosure. *See Houston First American Sav. v. Musick*, 650 S.W.2d 764, 768 (Tex. 1983) ("Compliance with the notice condition contained in the deed of trust and as prescribed by law is a prerequisite to the right of the trustee to make a sale."); *Olivares v. Nix Trust*, 126 S.W.3d

---

[4] The majority characterizes Myrad's claim as a wrongful foreclosure claim by asserting it was Myrad's burden to show that there was an "irregularity" in the foreclosure sale and that the price paid was "grossly inadequate." *See Powell v. Stacy*, 117 S.W.3d 70, 75 (Tex. App.—Fort Worth 2003, no pet.) (The threshold issue in action challenging the validity of a foreclosure sale is "whether there are any irregularities in the sale and if so, whether there is proof that those irregularities caused a sale at a grossly inadequate price."); *see also Sanders v. Shelton*, 970 S.W.2d 721, 724 (Tex. App.—Austin 1998, pet. denied); *Pentad Joint Venture v. First Nat'l Bank of La Grange*, 797 S.W.2d 92, 96 (Tex. App.—Austin 1990, writ denied). Wrongful foreclosure claims usually arise in the context of a lender's deficiency action because the foreclosure has not satisfied the outstanding debt. The opposite is at issue in this case. Myrad's position is that the price was adequate to convey the property that was included in the foreclosure sale, the Casa Grande property. It is appellees—not Myrad—who seek to modify the foreclosure sale. It, therefore, was not Myrad's burden to show "irregularity" or "inadequate" price at the foreclosure sale, but appellees' burden to show that the foreclosure was a valid conveyance of the La Casa property in addition to the Casa Grande property.

242, 246 (Tex. App.—San Antonio 2003, pet. denied) (trustee's power to sell property is derived "solely from the deed of trust and can only be exercised in strict compliance with the note and conditions of sale"). Recognizing the harshness of collection through deeds of trust, strict compliance is required.[5] *See Musick*, 650 S.W.2d at 764 (citing *Fuller v. O'Neal*, 6 S.W.181 (1887)). To uphold the trial court's declarations that both properties were sold at the foreclosure sale, appellees must have presented conclusive proof that the notice requirements were met. Notice of a non-judicial foreclosure sale must be given before the sale to the public and to the debtor. *See* Tex. Prop. Code Ann. § 51.002(b) (West 2007). The notice requirement seeks not only to protect the debtor to give him the opportunity to cure, but also to inform the public in order to "maximize the likelihood of a profitable public sale at market value in which the debtor may recover his equity in the property." *See Jasper Fed. Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672, 674-75 (Tex. 1987);

---

[5] Cobb testified that strict compliance with notice was required for non-judicial foreclosure sales:

Q:      . . . That generally speaking, that a trustee sale is a substitution for a judicial
        foreclosure?

A:      Yes.

Q.      It's more expeditious. You don't go to court to get the property.

A:      True, yes.

Q:      And isn't it true that because you are basically taking somebody's property,
        that the law requires that it be done with precision and accuracy and in a fair
        manner?

A:      I agree.

9

*Hausmann v. Texas Sav. & Loan Ass'n*, 585 S.W.2d 796, 799 (Tex. Civ. App.—El Paso 1979, writ ref'd n.r.e.) (general purpose of statute "to provide a minimum level of protection for the debtor").[6]

To reach its conclusion that notice was legally sufficient as a matter of law, the majority relies on a letter from Myrad's counsel to Green that was sent before the foreclosure that referenced the foreclosure of both properties. A lender's intentions or a debtor's understanding, however, do not bear on whether the *notice to the public* was legally sufficient to satisfy the statutory requirements. The majority also relies on a sentence in the Notice that states "Notice is hereby given of Holder's election to proceed against and sell both the real property and any personal property described in the Deed of Trust . . . ," and on *Mercer v. Bludworth*, 715 S.W.2d 693, 700 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). The majority concludes that the sentence "unequivocally" notifies the reader that LaSalle would be proceeding against all of the real property described in the Deed of Trust despite also concluding that the document is "internally inconsistent."

The majority ignores contrary evidence including the documents and the testimony and conduct of the trustees. This evidence, viewed in the light most favorable to Myrad as the nonmovant, showed that the Notice and the Substitute Trustee's Deed did not identify the La Casa property as the property being sold and that the public notice, the Deed of Trust, and Strickland's conduct at the sale showed a foreclosure of only the Casa Grande property. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Strickland, the trustee conducting the foreclosure sale, only recited the property description for the Casa Grande property as the property being sold.

---

[6] The need for statutory protections for borrowers is particularly apparent when the lender is also the purchaser at the non-judicial foreclosure sale, and strictly complying with the notice requirements is not onerous.

Further, Strickland recorded the Substitute Trustee's Deed on the same day as the foreclosure sale, demonstrating LaSalle's intent to convey only the Casa Grande property. *See Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261-62 (Tex. 1974) ("grantor intended to convey the land according to the terms of the deed . . . when it is shown that the deed has been filed for record"). Cobb testified that the notice did not include the legal description for both properties:

Q: . . . Do you consider it to be a mistake that a full legal description of both pieces of property was not included in the notice?

A: It was an error, and I don't know how it happened. It was an error that both were not included.

Cobb also testified that the Substitute Trustee's Deed only conveyed one property, "The deed conveyed one property, yes."[7]

---

[7] Cobb testified that the Substitute Trustee's Deed did not convey the La Casa property:

Q: Okay. Now you would agree with me that a deed does require a metes and bounds description to be effective?

A: Yes. Actually, that's not entirely true. I've seen deeds with lot and block descriptions that are effective.

Q: Okay. Either/or?

A: Uh-huh, yes.

Q: Okay. And in this case, there was neither a metes and bounds nor a lot and block description of La Casa?

Appellees' Counsel: Object to the form.

A: That's correct, yes.

11

The Deed of Trust was also consistent with the conveyance of only the Casa Grande property. Because the Deed of Trust specifically allows all or a part of the property to be sold, the Notice referencing the Casa Grande property and the Deed of Trust is consistent with an intention to provide potential purchasers with a "more particular description" for the Casa Grande properties, the property being sold. *See American Sav. & Loan Ass'n v. Musick*, 531 S.W.2d 581, 585 (Tex. 1975) ("Although the deed did refer to the deed of trust for a more particular description of the land conveyed, the deed did not purport to convey *all* of the tracts described in the deed of trust."). The majority discounts the provision in the Deed of Trust that expressly allows the trustees to sell the "Property or any part thereof" by stating that it "impl[ies] nothing about which of these remedies [LaSalle] had elected." The majority's interpretation renders the Property description actually contained in the Notice meaningless. *See Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). Because the Notice on its face contains no error as a notice to sell the Casa Grande property, the public would have had no reason to contact the trustee to determine if any other property was being sold.

Similarly, the sentence in the Notice —"Notice is hereby given of Holder's election to proceed against and sell both the real property and any personal property described in the Deed of Trust . . . ."—is not conclusive to satisfy the notice requirements when read in context with the sentence's reference to section 9.604 of the Texas Business and Commerce Code. *See Seagull*

---

Q:   And so the deed was defective in that regard?

A:   The deed conveyed one property, yes.

12

*Energy*, 207 S.W.3d at 345; *Luckel v. White*, 819 S.W.2d 459, 461-62 (Tex. 1991) (all parts should be harmonized in construing an instrument to give effect to all of its provisions).[8]  Section 9.604 addresses when a security agreement covers both real and personal property.  *See* Tex. Bus. & Com. Code Ann. § 9.604 (West 2002).  A secured party, in the event of default, has the option to proceed against both the personal and the real property covered by a security agreement in accordance with the secured party's rights and remedies with respect to the real property.  *Id*.  Nelson averred in his affidavit that this language is not customarily used to describe the real property that is being foreclosed but to express a lender's election to foreclose on the personal property at the same time and under the same procedure as the real property.  *See id.*

The majority's reliance on *Mercer v. Bludworth* is also misplaced.  *See* 715 S.W.2d 695.  *Mercer* was not decided in summary judgment but after a trial.  *See id.* at 695, 698.  Further, the majority equates the failure to identify the correct date and recording reference of a deed of trust with the addition of a separate piece of property to the one identified in the notice.  *See id.* at 700.  I would hold that appellees failed to conclusively prove that the public notice met the statutory notice requirements for the La Casa property and that the trial court erred in declaring that the foreclosure sale conveyed the La Casa property to LaSalle.[9]

---

[8] At most, I would conclude that appellees have created a fact issue on the interpretation of the notice.  *See Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) (ambiguity exists when "language is susceptible to two or more reasonable interpretations"); *see also Coker v. Coker*, 650 S.W.2d 391, 394-95 (Tex. 1983) (summary judgment improper when instrument contains an ambiguity because interpretation becomes fact issue).

[9] As part of its argument, appellees contend that ruling that the foreclosure sale was only as to the Casa Grande property would result in Myrad receiving a windfall.  The majority's holding has resulted in the opposite.  Appellees have been granted a windfall and complete reprieve from their admitted failure to strictly comply with statutory notice requirements.  The majority in effect

Because I would hold that the trial court erred in declaring that the foreclosure sale conveyed the La Casa property, I also would hold that the trial court erred in declaring the Correction Deed vested title in the La Casa property in LaSalle. Appellees, as the movant and with the burden of proof, had to present evidence that conclusively showed that the Correction Deed was valid to vest title in the La Casa property in LaSalle. A correction deed may be filed to correct "facial imperfection in the title." *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 871 (Tex. App.—Dallas 2005, no pet.); *see also Joe T. Garcia's Enters., Inc. v. Snadon*, 751 S.W.2d 914, 916 (Tex. App.—Dallas 1988, writ denied) ("A correction deed is executed and recorded for the unique purpose of correcting a scrivener's error in the *description* of the property."); *but see Centerpoint Energy Houston Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 434 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (correction deed may do more than correct a scrivener's error in the description of property).

Appellees contend that the failure to attach the property description for the La Casa property on the Notice, the Appointment of Substitute Trustee, and Substitute Trustee's Deed was a clerical error and, thus, the Correction Deed was proper to correct the description of the property in the Substitute Trustee's Deed as a matter of law.[10] Whether appellees' error in not attaching the

substitutes its judgment for the trier of fact that the notice was good enough with the result that appellees have been given a windfall, including Myrad's equity in the property. LaSalle's representative testified that Myrad had "several hundred thousand dollars of equity in the property" at the time of the foreclosure sale, and Myrad presented evidence that the amount of equity was significantly higher. An alternative remedy sought would not have resulted in a windfall to either party—the foreclosure sale could have been rescinded and re-conducted in compliance with the statutory requirements. This equitable solution has been foreclosed without the benefit of trial.

[10] Appellees' evidence that the failure to attach the metes and bounds description for the La Casa property was a clerical error included Cobb's testimony that it was her intention to prepare

14

La Casa property description was clerical or otherwise is not determinative. *See Alfalfa Lumber Co. v. Mudgett*, 199 S.W. 337, 338-39 (Tex. Civ. App.—Amarillo 1917, no writ) (purpose of public notice defeated if showing of mistake in property to be sold permits reformation of sheriff's deed). The character of the error does not address the required public notice for a foreclosure sale to be valid. Otherwise, a party unilaterally could file a correction deed to vest title in a separate piece of property regardless of whether the notice and sale as to the separate property complied with the public notice requirements, a result that would circumvent and eliminate the statutory requirements in that situation.[11]

---

the foreclosure paperwork as to both properties and the evidence of LaSalle's credit bid at the foreclosure sale.

[11] This is precisely what happened in this case. Cobb testified that there was nothing wrong with the property description for the Casa Grande property on the Substitute Trustee's Deed but that the correction deed was filed to include the La Casa property—an additional piece of property:

> Q:    Now, there was nothing wrong with the property description on the first deed insofar as it described La Casa, was there—Casa Grande? Strike that.
>
> A:    Casa Grande, that's correct.
>
> Q:    Now, typically a corrective deed is filed when there's an error in the property description, like it's Block 12. In reality, it's recorded as Block 12, but instead you end up putting Block 11.
>
> A:    The property description on the original Trustee's Deed was incomplete. That's why we filed a corrective deed after the injunction hearing.
>
> Q:    Well, I want to go over that with you. Are you familiar with corrective deeds?
>
> A:    Honestly, I've never had to file one before.
>
> Q:    Okay. Well, that would be one when you could use one, when there was an error in describing the property that was actually conveyed, right?

15

I would hold that a party cannot unilaterally file a correction deed to vest title in a separate piece of property that was not noticed in compliance with statutory requirements or specifically included in a non-judicial foreclosure sale. Because appellees did not conclusively prove that they properly noticed the La Casa property for foreclosure, I would hold the trial court erred in its declaration that the Correction Deed vested title in the La Casa Apartments in LaSalle and that appellees were without authority to unilaterally file the Correction Deed to vest title in the La Casa property.[12]

***Breach of Trustee's Duty and Conspiracy to Breach***

The majority concludes that for the same reasons summary judgment was appropriate on appellees' declaratory claims for relief, summary judgment also was appropriate on Myrad's

---

A:    Yes.

Q:    But there was nothing wrong with the property description that was made of Casa Grande, it simply did not include an additional piece of property that you thought it should include?

A:    There was an error in the overall property description of the collateral, which we foreclosed on. As to Casa Grande, isolated, no. As to the collateral, yes, it was incomplete and it was in error.

[12] Appellees urged summary judgment on Myrad's claim to quiet title on the same grounds. Appellees also urged alternative declaratory grounds for summary judgment that LaSalle maintained legal and equitable interest in the properties and that the foreclosure sale did not result in the Deed of Trust being extinguished to allow appellees to re-conduct the foreclosure sale. I would also conclude that these alternative claims for declaratory relief and Myrad's claim to quiet title are intertwined and dependent on the resolution of disputed issues of material fact.

16

claims for breach of trustee's duty and conspiring to do so.[13]  I would conclude that fact issues remain that preclude summary judgment.

Although not a fiduciary duty, a trustee has a duty in connection with a foreclosure sale to act with "'absolute impartiality and fairness' to all concerned, including the mortgagor." *See Peterson v. Black*, 980 S.W.2d 818, 822 (Tex. App.—San Antonio 1998, no pet.); *First State Bank v. Keilman*, 851 S.W.2d 914, 925 (Tex. App.—Austin 1993, writ denied) (citing *Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex. 1977)).  A trustee fulfills the duty of impartiality and fairness by "strictly complying with the terms of the deed of trust." *Keilman*, 851 S.W.2d at 925.

Myrad's evidence sufficiently raised genuine issues of material fact whether the trustees breached their duty to Myrad and conspired to do so in their conduct surrounding the Notice, the foreclosure sale, and the Correction Deed, including whether they properly filed the Correction Deed after the foreclosure sale without a court order or Myrad's agreement. *Bonilla v. Roberson*, 918 S.W.2d 17, 22 (Tex. Civ. App.—Corpus Christi 1996, no writ) ("There must be a certain point in time at which the sale by the trustee may be said to have been completed and his duties and authority come to an end. . . . Any subsequent action to avoid the sale must be brought by the parties

_____

[13] Appellees sought both traditional and no-evidence summary judgment on Myrad's breach of trustee and conspiracy claims.  Appellees argued in their motion that they were entitled to summary judgment (i) on the claim for breach of trustee's duty because "the Substitute Trustee strictly complied with the terms of the Deed of Trust and, therefore, fulfilled its duty of impartiality and fairness" and "[t]here was no other duty owed to Plaintiff," and (ii) on the conspiracy claim because "Defendants did not owe a fiduciary duty to Plaintiff and, therefore, did not commit an unlawful or overt act, as required to prove an action for conspiracy."  Appellees also argued—in two sentences—that they were entitled to no-evidence summary judgment on the breach of trustee claim and the conspiracy claim: (i) "Plaintiff has no evidence to support that Defendants owed a fiduciary duty to Plaintiff," and (ii) "Plaintiff has no evidence to support that Defendants committed one or more unlawful, overt acts against Plaintiff."

17

as a cause of action.").[14] Myrad's evidence was that the trustees did not strictly comply with the Deed of Trust and that they participated in filing the Correction Deed to vest title in the La Casa property despite knowing the property had not been properly noticed for the foreclosure sale or recited by the trustee as being sold at the foreclosure sale. As to appellees' motion against Myrad's claim for conspiracy, appellees challenged only the element of an "unlawful, overt act." Myrad presented evidence that the trustees breached their duty to be fair and impartial to Myrad, which actions constitute evidence of "unlawful, overt acts" as part of a conspiracy.[15] I would conclude that appellees were not entitled to summary judgment on Myrad's claims for breach of trustee's duty and conspiracy to do so.

**Myrad's Claim for Surplus**

The majority concludes that Myrad raised a genuine issue of material fact on its declaratory claim that a surplus is owed to avoid no-evidence summary judgment, but then limits the remand to whether an insurance charge was improper and whether Myrad was entitled to interest.[16]

_____

[14] There was also evidence that the trustees' actions caused Myrad damage. When LaSalle bid $978,000 at the foreclosure sale, there was evidence that third parties were interested in the properties, that third parties attended the foreclosure sale, and that Myrad had equity in the properties. Cobb testified that she had been contacted by a potential third-party bidder and that there was a good chance that a third-party bidder wanted to purchase the property at the foreclosure sale.

[15] The elements of a civil conspiracy claim are (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as the proximate result. _Massey v. Armco Steel Co._, 652 S.W.2d 932, 934 (Tex. 1983).

[16] The majority states that the burden was on Myrad "to raise a fact issue regarding each element of its [surplus] claim." Faced with a no-evidence motion, however, the nonmovant need only address the elements of its claim that the movant specifically addresses in its motion. _See_ Tex. R. Civ. P. 166a(i). Appellees in the no-evidence portion of their motion do not address Myrad's

18

In limiting the remand, the majority details LaSalle's computations for the amount Myrad owed under the Note at the time of the foreclosure and analyses the particular charges that Myrad raised, ignoring the burden on the nonmovant and Myrad's pleading for an accounting. *See* Tex. R. Civ. P. 166a(i).[17] To defeat a no-evidence motion, "the respondent is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." *Id.* cmt. Myrad was not required to show the specific amount of surplus that it ultimately will claim is owed at trial or to provide evidence of each improper charge to defeat summary judgment. *Id.* Viewing the evidence in the light most favorable to Myrad as the nonmovant, I would conclude that there remain genuine issues of material fact that preclude summary judgment on Myrad's declaratory claim that it is owed a surplus and remand for further proceedings without limiting the remand to the majority's identified issues.[18]

---

declaratory claim for surplus specifically, but globally state "Plaintiff cannot present any evidence sufficient to raise a question of fact on the causes of action pleaded against Defendants." I would hold that Defendants did not identify an element of Myrad's surplus claim that would require Myrad to present evidence to defeat no-evidence summary judgment. On this basis alone, I would hold that appellees' no-evidence summary judgment should have been denied. *See* Tex. R. Civ. P. 166a(i).

[17] Appellees' only reference to Myrad's declaratory claim that it is owed a surplus in their traditional summary judgment portion of their motion was that "Plaintiff cannot establish the essential elements for its requested declaratory relief." *See* Tex. R. Civ. P. 166a(c) and 166a(i). They do not address the balance Myrad owed at the time of the foreclosure. To be entitled to traditional summary judgment, it was appellees' burden—not Myrad's—to prove conclusively that no surplus was owed. *See* Tex. R. Civ. P. 166a(c).

[18] The majority holds that Myrad has failed to raise a fact issue regarding "property protection advances" and "miscellaneous fees" because Myrad has failed to show how LaSalle's actions as to these two categories of charges fall outside its broad rights under the loan documents. I would hold that these charges would be at issue on remand as well as other charges that Myrad contends were improper.

Because there are genuine issues of material fact that should preclude summary judgment and the majority opinion only feigns fidelity to the statutory requirements of non-judicial foreclosure, I would reverse and remand to the trial court for further proceedings.[19]

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Filed:   January 25, 2008

_____

[19] I would also conclude that Myrad's motion for partial summary judgement was properly denied because there are genuine issues of material fact that remain.  Myrad sought partial summary judgment pursuant to Rule 166a(c) on its declaratory claims that the foreclosure sale was valid, that the sale did not convey the La Casa property, that Myrad is entitled to a credit, and that the Correction Deed was void and unenforceable.  Myrad also sought summary judgment pursuant to Rules 166a(c) and 166a(i) on appellees' claims for rescission and reformation. The evidence raised several fact issues including the amount of the outstanding debt that Myrad owes under the Note and the Deed of Trust; whether a surplus is owed to Myrad and, if so, how much; what the parties' intentions and understanding were as to the foreclosure sale; and whether mistake, unjust enrichment or the agreement between the parties support rescission or reformation of the foreclosure sale.  *See Davis v. Grammar*, 750 S.W.2d 766, 768 (Tex. 1988) (based on jury finding of mutual mistake, deed reformed); *Hatch v. Williams*, 110 S.W.3d 516, 522 (Tex. App.—Waco 2003, no pet.) (after a bench trial, court granted reformation due to mutual mistake in property description in deed); *Lowrey v. University of Texas Med. Branch*, 837 S.W.2d 171, 174 (Tex. App.—El Paso 1992, writ denied) (equitable remedy of rescission allows courts to set aside a contract that is legally valid but "marred by fraud, mistake, or for some other reason must be set aside to avoid unjust enrichment").